HON. MARY P. BASS Vice-Chancellor Board of Higher Education
This is in reply to your inquiry in which you request a supplementary opinion to my opinion of August 30, 1974, relative to the treatment of instructional fees for the purpose of State aid. In that 1974 opinion, I concluded:
 "Thus in response to the question posed in your inquiry, it is my opinion that, for the period covered by the audit, instructional fees received by community colleges in the City of New York, if they did not exceed the student's share of community college operating costs, were not required to be offset in determining net operating revenue of the college for State aid purposes. However, if the fees were received from students enrolled in evening or extension programs, the fees would be offset against costs, but only if the programs were separately financed or the City did not contribute the sponsor's share of the operating costs of the program."
You now advise that, in applying that opinion, the State Comptroller has stated (Exhibit 6 to your present inquiry):
 "to the extent that instructional fees received from other than resident matriculated students exceed their one-third share of costs, such excess should be considered an offset to State and City costs and shared equally between them. * * *
 "The way in which the offset is to be made will depend upon the extent to which City University has maintained appropriate accounting records. If records of costs incurred for non-matriculated students and non-resident students by course of study are not available, then we would suggest that the offset be made on some overall basis."
The Board of Higher Education, however, contends that, as a matter of fact, the community colleges of the City University operated under consolidated budgets under which their evening and extension programs were not separately financed and that, therefore, no offset of costs is to be made for purposes of determining State aid.
Attached to your inquiry are copies of the applicable pages of the New York City Expense Budgets for the years at issue (i.e.,
1963-64 through 1972-73). In each year it appears that appropriations for the evening session were integral parts of consolidated budgets and that no distinction was made between matriculated and non-matriculated students or courses referred to in Education Law, § 6208(3) which deals with the application of instructional fees. The regulations applicable to computation of State aid, as in effect for the period of the audit, provided that costs of evening and extension programs could be included for State aid if the sponsoring community contributes its share of operating costs (8 NYCRR, § 602.4). Prima facie, therefore, net operating costs of the evening and extension programs would be eligible for State aid without offset of instructional fees.
However, Education Law, § 6304 and section 602.4 of the applicable Rules and Regulations are not the sole controlling factors.
Education Law, § 6208(3) specifically deals with the use of instructional fees received by the community colleges. That section provides:
 "3. All instructional fees hereafter received by any community college conducted pursuant to the provisions of this article, or any law affecting such college, shall be accounted for and paid into the city treasury and shall at once be appropriated by the board of estimate of the city, or body exercising like powers, to a special fund to be administered by the trustees of each such college in furnishing and conducting technical, professional and special courses of study and other educational advantages, including service to non-matriculated students, exclusive of regular undergraduate courses for resident matriculated students, leading to baccalaureate degrees. Each such fund shall be credited to each distinct college unit earning it and be drawn upon by such college unit to meet the expenses described above. The trustees of each such college shall report to the comptroller of the city the amount of the unexpended balance in such special fund to the credit of each college unit at the end of each fiscal year, and any such balance which shall remain unappropriated by the said board of trustees at the end of the succeeding fiscal year shall then be paid into the city treasury to the credit of the general fund."
That section clearly requires that instructional fees received by community colleges in the City of New York be paid into a special fund to pay for the costs of certain special courses of study. It should also be noted that the courses supported by this fund are not necessarily the same courses as those attended by the students paying the fees, since non-matriculated students required to pay instructional fees may be taking the same courses as matriculated students although the fees are to be utilized only to pay costs of "technical, professional and special courses of study and other educational advantages * * * exclusive of regular undergraduate courses for resident matriculated students, leading to baccalaureate degrees". Thus, the courses referred to in section 6208(3) cannot be conclusively determined by tracking the students paying the fees.
It is also apparent from the provisions of section 6208(3) that the Legislature intended that the instructional fees completely cover the expenses of eligible courses, since the statute provides that each college may draw upon the appropriate fund to meet the expenses of such courses and provides only for the disposition of surplus moneys, not for the payment of expenses where the fund is inadequate. Additionally, unexpended moneys are to be paid ultimately to the city treasury, credited to the general fund, with no requirement that they be utilized for community college support. If the costs of these courses, and the instructional fees, were intended to be included in State aid computations, surplus revenues would have to be available to the community colleges for the purpose of allocating the students' sponsoring community's shares of operating costs. Also, the moneys in the fund remain available for college use for two years, which would further complicate the computations necessary for State aid allocation.
It is, therefore, my opinion that, even though the City community colleges have a unified budget which combines day and evening sessions, thus making the evening sessions' costs eligible for State aid, the particular courses referred to in section 6208(3) are required to be separately financed and are not eligible for State aid. It appears from the exhibits attached to your inquiry that instructional fees have never been deposited in special funds as required by the statute. A determination may, therefore, be made by the Comptroller as to which courses come within the criteria of section 6208(3) and deduct their costs from the operating costs of the college for the purpose of properly allocating State aid. Also, in computing State aid, relative to the remaining college operating costs, no consideration would be given to the fact that students, attending courses other than those under section 6208(3), have paid instructional fees since those fees are not applied to defray the costs of those courses.